RAPHAEL S. SPANO, Plaintiff, *v.* CITY OF MIDDLETOWN and Others, Defendants.

Supreme Court, Orange County, August 22, 1938.

*Ellsworth Baker,* for the plaintiff.

*Walter E. Deisseroth* [*John Bright* of counsel], for the defendants.

NOLAN, J: This action is brought pursuant to section 51 of the General Municipal Law to restrain the issuance and delivery of bonds of the city of Middletown, which bonds are about to be issued for the purpose of financing the erection of a new high school as a P. W. A. project. The contention of the plaintiff is that since the charter of the city requires that the vote upon such a proposition shall be by ballot, unless the common council by resolution at the time of designating the time and place of election, shall permit the use of voting machines, and since no such designation was made and voting machines were used, the election by which it was submitted to the voters of the city of Middletown to determine whether or not such bonds should issue is invalid, and consequently the issuance of such bonds will be illegal and should be restrained.

There is no allegation of any illegality in the election other than that alleged as to the manner in which the vote was taken or of any fact otherwise tending to show waste or injury to property, funds or estate of the city, of any collusion, fraud or other wrongdoing. It is not alleged that the proposition to be voted on was not clearly submitted or was not, by reason of the manner in which the vote was taken, as understandable as though the vote had been taken by ballot or that any person qualified to vote was thereby prevented from voting, or that the result of the vote was affected in any way by the substitution of voting machines.

The Federal Emergency Administrator offered, in June, 1938, to aid in financing the erection and equipment of the building by a grant to the board of education. The offer was accepted by unanimous vote of the board. It remained for the city to provide for the raising of funds necessary to pay fifty-five per cent of the cost of the project. In spite of the provisions of the charter, no vote

of the people or the taxpayers was necessary to approve the contract with the United States or to provide for the issuance of bonds to finance the project. (Industrial Recovery Act, Laws of 1933, chap. 782, § 4 [McKinney's Unconsol. Laws, § 1674]; § 5-b, as amd. by Laws of 1937, chaps. 133, 253 [McKinney's Unconsol. Laws, § 1679]; § 6-a [McKinney's Unconsol. Laws, § 1681].) Under these enactments, the purpose of which was to facilitate the promotion of public work projects without the necessity of complying with local or general laws requiring a vote of taxpayers (Opinion Atty.-Gen. 1933, 48 St. Dept. Rep. 806), the city was empowered, notwithstanding the provisions of any general, special or local law, by the majority vote of its legislative body to enter into contracts with the United States to obtain funds for public work projects (§ 4), and to issue bonds to pay the portion of the cost, to be borne by it, of any such projects (§ 5-b), without submitting the question of the authorization of such projects or the issuance of such bonds to a vote at an election, such as was held in the instant case.

The defendant did not, however, avail itself of the procedure provided by the emergency legislation, but by resolution of its common council submitted the question of authorization of the project and of the issuance of bonds to a vote of the qualified voters of the city held on July 29, 1938. The resolution did not provide for the use of ballots or of voting machines. At the election two voting machines were used to record the votes. One of the voters was the plaintiff and neither he, nor any other voter, objected to the manner in which the vote was taken. There is no contention that the machines did not properly record the vote.

Section 4 of chapter 782 of the Laws of 1933, in so far as it relates to the submission of the question involved to the voters at an election, makes no provision for the manner in which the vote shall be recorded. The Election Law now provides that voting machines once adopted may be used at any or all elections other than primary elections. (Election Law, § 243.) The charter of the defendant city, however, in providing for the vote at an election such as was held in this case, provides that unless voting machines shall have been designated by the resolution fixing the time and place of the special election, the vote shall be by ballot. Plaintiff contends that there is no conflict between the statutes in question, that they may and should be read together and that the charter provisions as to the manner of voting govern.

Conceding that this is so, it would appear that the only defect or illegality complained of is that there was no resolution designating voting machines instead of ballots. The question to be determined is whether such defect in the proceedings was of such con-

sequence as to render the election void, and to justify the issuance of an injunction restraining the issuance of the bonds approved at the election.

I believe that the defect was not so substantial as to render the entire proceeding void but was at most an irregularity which may be disregarded. The rule generally expressed in cases of this character is that unless it is expressly declared by statute that the particular act is essential to the validity of the election, or that its omission will render it void, an election which appears to have been honestly and fairly conducted will not be vitiated by mere irregularities which are not shown to have affected the result. Statutes giving direction as to the mode and manner of conducting elections are generally construed as directory, unless a non-compliance with their terms is expressly declared to be fatal, or will change or render doubtful the result. (20 C. J. 180, 181; *People* v. *Cook*, 8 N. Y. 67; *Salducco* v. *Etkin*, 155 Misc. 361; *People ex rel. Hirsh* v. *Wood*, 148 N. Y. 142; *Matter of Merow*, 112 App. Div. 562, 563.)

It is further contended that by reason of the fact that the proposition submitted indicated that the city had obtained a Federal grant, whereas in fact the grant had been made to the board of education, the voters were deceived by the form of the proposition and that since the city does not own the property upon which the school is to be erected, the taxpayers were also misled because the original resolution of the board of education provides that the board certify to the city the necessity that the city erect a new school on property " now owned by the city." The board of education is, it is true, a body corporate. (Education Law, § 300.) Its school limits are coterminous with the boundaries of the city. The members of the board are elected by the city at large. While the control of the city as such over the board of education in the exercise of its functions relating to education is limited, the board of education of a city is considered a department of the city government. (*McCabe* v. *Gross*, 274 N. Y. 39.) The fact that the Federal grant was made to the board of education does not prevent the city from raising the money necessary to pay its part of the cost of the project. The construction of schools is a public or municipal purpose for which the city is authorized to assume debt. (Gen. City Law, §§ 20, 21.) Had no grant been made to the board of education, the city, upon proper proceedings, could have assumed the entire expense of the erection and equipment of the new school and is not now prevented from assuming a portion of the expense, by reason of the fact that the board of education has accepted a grant, which under the express terms thereof and of the law applicable thereto, must be used for the same purpose as the funds to be raised

by the defendant by the bond issue in question. That the land in question is owned by the board of education is no deterrent to the expenditure of money thereon by the defendant, nor in my opinion were the taxpayers of the city deceived by or misinformed in any material respect by the manner in which ·the proposition voted on was presented, or by the fact that the board of education, in its original resolution, referred to the property on which the school is to be erected as a plot owned by the city.

Moreover, since no vote of the taxpayers was necessary, the city may still, without further vote by the taxpayers, by a majority vote of its legislative body, remedy any defect in the proceedings in question and provide for the issuance of the bonds necessary to complete the cost of the project. (Laws of 1933, chap. 782, § 5-b.)

Motion for injunction *pendente lite* denied. Settle order on notice.